**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

UNITED STATES OF AMERICA           :
                                   :
    v.                             :        Criminal Action No.:  25-342 (RC)
                                   :
ERIC MALIK SMITH,                  :        Re Document No.:    10
                                   :
    Defendant.                     :

**MEMORANDUM OPINION**

**DENYING DEFENDANT'S MOTION TO SUPPRESS**

**I.  INTRODUCTION**

Defendant Eric Malik Smith ("Mr. Smith") moves to suppress evidence he contends was obtained in violation of the Fourth Amendment. Specifically, he seeks to suppress a firearm police recovered in plain view on the wheel well of a parked vehicle, near where witnesses observed him approach, crouch, and depart. He also seeks suppression of his DNA evidence, which police obtained from a buccal swab pursuant to a search warrant. Mr. Smith argues that both the firearm and DNA evidence were obtained as a result of his unlawful arrest and that, because the arrest lacked probable cause, the evidence must therefore be excluded as fruit of that unlawful arrest. For the reasons set forth below, the Court denies the motion. Neither the firearm nor the DNA evidence were obtained in violation of Mr. Smith's Fourth Amendment rights.

**II.  FACTUAL BACKGROUND**

On August 8, 2025, officers with the Washington Metropolitan Police Department arrested Mr. Smith at 100 42nd St NE, after the property's security guards identified him as the last person seen in the immediate vicinity of a firearm lying in plain view on the wheel well of a parked vehicle. *See* Def.'s Mot. Suppress ("Def.'s Mot.") Ex. 1. At the time, security guards

were monitoring a live camera feed located on the property. Def.'s Mot. Ex. 2 at 4:23; Def.'s Mot. Ex. 3 at 8:16. While doing so, they observed Mr. Smith walk across the parking lot to a parked vehicle, crouch near the rear driver's-side tire, then stand up, walk away, and enter the building. Def.'s Mot. Ex. 2 at 7:15–7:33, 11:46, 29:41–30:22; Def.'s Mot. Ex. 3 at 8:16–8:55; Gov't's Ex. GX4 at 9:06–11:43.

Finding this behavior strange, the security guards went to the location where Mr. Smith had been seen crouching. Def.'s Mot Ex. 2 at 10:56; Gov't's Ex. GX4 at 11:43– 15:08. There, they observed a firearm resting in plain view on the vehicle's tire within the wheel well. Def.'s Mot Ex. 2 at 7:15–7:33, 10:56–11:20. The guards then contacted police to report the firearm. When officers arrived, they proceeded to the same location and likewise observed the firearm in plain view. *Id.* at 4:55–5:26. The officers seized the weapon and identified it as a Glock with an obliterated serial number. *Id.* at 4:55–6:10.

Building employees were familiar with Mr. Smith, as he regularly attended counseling sessions there. *Id.* at 3:58; Def.'s Mot Ex. 3 at 9:19–9:29. A witness stated that Mr. Smith did not drive and that the vehicle did not belong to him, noting that they often transported him to his appointments. Def.'s Mot Ex. 2 at 4:55; Def.'s Mot Ex. 3 at 9:19–9:29. Officers attempted to obtain the security camera footage viewed by the guards but were unable to do so at that moment because the footage was stored offsite, and access required a formal request. Def.'s Mot Ex. 2 at 7:15–7:33; Def.'s Mot Ex 3 at 7:51. While on the scene, officers spoke with witnesses and conferred among themselves before deciding to effectuate an arrest. Def.'s Mot Ex. 2 at 3:56– 22:49; Def.'s Mot Ex. 3 at 4:19–19:04. They then entered the building, proceeded through several hallways and offices to the location of Mr. Smith's counseling session, and arrested him. Def.'s Mot Ex. 2 at 24:00–25:55; Def.'s Mot Ex. 3 at 2:48, 19:04–20:27.

On August 9, 2025, following the arrest, police sought a search warrant in D.C. Superior Court to collect Mr. Smith's DNA through a buccal swab. Def.'s Mot Ex. 5 at 1. In support of their request, police attached an affidavit recounting the August 8 events, including that building staff had identified Mr. Smith as the individual who had last been seen near the vicinity of where the firearm had been discovered. *Id.* at 3. According to the affidavit, Mr. Smith's DNA would be compared to any DNA found on the firearm, which would indicate whether Mr. Smith had been in possession of the firearm. *Id.* Based on the affidavit, a D.C. Superior Court magistrate judge found probable cause and issued the search warrant. *Id.* at 4. Several days later, however, a different D.C. Superior Court magistrate judge, after reviewing the security camera footage, determined at a preliminary hearing that Mr. Smith's arrest had not been supported by probable cause. Def.'s Mot Ex. 4 at 60:7–12. Analysis of the buccal swab later revealed that Mr. Smith's DNA matched that which was recovered from the firearm.

On October 30, 2025, a federal grand jury indicted Mr. Smith for unlawful possession of a firearm and ammunition by a felon (18 U.S.C. § 922(g)(1)). Indictment, ECF No. 1. According to the indictment, Mr. Smith had previously been convicted in West Virginia of a federal crime punishable by imprisonment for a term exceeding one year. *Id.* at 1. On February 6, 2026, Mr. Smith moved to suppress evidence related to the events on August 8, 2025. Def.'s Mot., ECF No. 10. In particular, he seeks suppression of the firearm police retrieved from the vehicle's wheel well, asserting that such search and retrieval was incident to his unlawful arrest and therefore unreasonable under the Fourth Amendment. *Id.* at 4–6. Mr. Smith also seeks suppression of the DNA evidence police obtained from his buccal swab, asserting that such evidence can only be obtained pursuant to a lawful search incident to arrest, and because his arrest lacked probable cause, any evidence obtained in connection with that arrest requires suppression. *Id.* at 6–7. The

3

Government opposed the motion. *See* Gov't's Opp'n, ECF No. 11. On March 20, 2026, the Court held a hearing on the motion, in which both parties introduced evidence. *See* Min. Entry (Mar. 20, 2026). The motion is now ripe for this Court's consideration.

### III.  ANALYSIS

Mr. Smith moves to suppress two pieces of evidence obtained in connection with the events of August 8, 2025, arguing that both were unlawfully obtained. Def.'s Mot. at 1. First, he contends that the DNA derived from his buccal swab must be suppressed because his arrest lacked probable cause and, as a result, the search warrant authorizing the swab was invalid, given that the supporting affidavit purportedly relied on that allegedly unlawful arrest. *Id.* at 6–7. Second, he argues that the firearm was recovered pursuant to a search incident to his arrest and that, because the arrest was unsupported by probable cause, the firearm must be suppressed as fruit of that unlawful arrest. *Id.* at 4–6.

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. When that guarantee is violated, courts generally apply the exclusionary rule, which requires suppression of evidence obtained through unconstitutional means. *United States v. Weaver*, 808 F.3d 26, 33 (D.C. Cir. 2015) (citing *Mapp v. Ohio*, 367 U.S. 643, 655 (1961)). The rule extends not only to "the primary evidence obtained as a direct result of an illegal search or seizure," but also to derivative evidence—"the so-called fruit of the poisonous tree." *Utah v. Strieff*, 579 U.S. 232, 237 (2016) (citation modified).

As explained below, the Court concludes that neither piece of evidence was obtained in violation of the Fourth Amendment. Accordingly, neither the DNA evidence nor the firearm must be suppressed. The Court addresses each argument in turn below.

**A.  The Buccal Swab Evidence Was Properly Obtained Pursuant to a Search Warrant.**

Mr. Smith seeks to suppress the DNA evidence obtained from his buccal swab. Def.'s

Mot. at 6–7. Although police obtained the swab pursuant to a search warrant issued by a

magistrate judge, Mr. Smith contends that the swab evidence must nevertheless be suppressed

because the warrant was obtained "as a direct result" of his August 8 arrest—an arrest that a D.C.

Superior Court magistrate judge later determined lacked probable cause. *Id.* at 6–7. Relying on

*Maryland v. King*, he argues that "a buccal swab is only proper when there is a lawful arrest

based upon probable cause." *Id.* at 7 (citing *Maryland v. King*, 569 U.S. 435 (2013)). But Mr.

Smith's reliance on *King* is misplaced.

In *King*, the Supreme Court considered a state statute requiring law enforcement to

collect a buccal swab from individuals arrested for serious offenses as part of the routine booking

process, without a warrant or individualized suspicion. 569 U.S. at 443–44. The Supreme Court

held that such statutorily mandated, suspicionless DNA collection was permissible under the

Fourth Amendment. *Id.* at 465–66. The circumstances here, however, are materially different. A

neutral magistrate judge, upon finding probable cause, issued a search warrant authorizing

officers to obtain Mr. Smith's DNA by buccal swab. Def.'s Mot. Ex. 5 at 1. As the Government

correctly notes, *King* did not address the constitutionality of a buccal swab obtained pursuant to a

warrant. It therefore does not control the analysis in this case. *Cf. United States v. Evans*, 427 F.

Supp. 3d 87, 91–92 (D.D.C. 2019).

Aside from *King*, Mr. Smith identifies no authority supporting the proposition that buccal

swab evidence may be obtained only as a search incident to a lawful arrest.[1] In any event, he

---

[1] Courts routinely issue buccal swab search warrants when supported by probable cause.
*See, e.g.*, *In re Search of One Device & Two Individuals Under Rule 41*, No. 25-SW-82, 2025
WL 1587951, at *1 (D.D.C. May 7, 2025).

appears to have abandoned that argument, as he failed to respond in his reply brief to the

Government's contention that *King* is inapplicable to the circumstances of this case. *See, e.g.*,

*Wal-Mart Stores, Inc. v. Sec'y of Lab.*, 406 F.3d 731, 736 n.* (D.C. Cir. 2005) (construing

moving party's "silence" in reply brief as an indication that the party had "abandoned [its initial]

argument"); *Hunter v. D.C. Child & Fam. Servs. Agency*, 710 F. Supp. 2d 152, 157 (D.D.C.

2010) (deeming initial argument for dismissal "abandoned" where defendant's reply brief "d[id]

not contest" plaintiff's opposition arguments). Instead, his reply brief focuses on the alleged

invalidity of the search warrant. That argument, however, fares no better.

Mr. Smith contends that the buccal swab warrant lacked probable cause, reasoning that

because the supporting affidavit referenced his arrest and charges, the issuing magistrate judge

must have relied on that allegedly unlawful arrest. Def.'s Mot. at 6. He further argues that

because substantially similar affidavits supported both his arrest and the buccal swab warrant, the

later determination that his arrest lacked probable cause necessarily renders the search warrant

invalid as well. *Id.*

But Mr. Smith's argument rests on a flawed premise. "The Supreme Court has long

distinguished between arrest warrants and search warrants." *United States v. Griffith*, 867 F.3d

1265, 1271 (D.C. Cir. 2017) (citing *Steagald v. United States*, 451 U.S. 204, 212–13 (1981)). An

arrest warrant requires probable cause to believe that a suspect committed an offense, which

"protect[s] an individual's liberty interest against unreasonable seizure." *Id.* A search warrant, by

contrast, requires probable cause to believe that evidence of a crime will be found in a particular

place, which protects an individual's privacy interests in his person or effects. *Id.*; *see also*

*Illinois v. Gates*, 462 U.S. 213, 238 (1983). Because these inquiries are distinct, a lack of

probable cause to arrest does not necessarily mean that probable cause is lacking to search for

evidence. *Cf. Griffith*, 867 F.3d at 1271. Therefore, a magistrate judge's later determination that Mr. Smith's arrest lacked probable cause does not undermine an earlier finding by a different judge that probable cause existed to issue the search warrant for his buccal swab.

Moreover, the affidavit supporting the search warrant provided the magistrate judge with a "substantial basis . . . for conclud[ing] that probable cause existed." *Gates*, 462 U.S. at 238 (citation modified). Contrary to Mr. Smith's suggestion, the affidavit did not rely solely, or even primarily, on his arrest. Rather, it detailed the underlying investigation, including that security guards observed an individual matching Mr. Smith's description crouching near the precise location where the firearm was recovered. *See* Def.'s Mot. Ex. 5 at 2–4. It also described Mr. Smith's movements near the vehicle, including him ducking and looking around before leaving the area. *Id.* at 2–3. The affidavit further noted that the firearm had been illegally modified to fire automatically. *Id.* at 2–3. Finally, it explained that DNA analysis could link, or exclude, Mr. Smith as a contributor to any DNA recovered from the firearm. *Id.* at 3–4. Taken together, these facts were sufficient to "induce a reasonably prudent person to believe that a search  . . . w[ould] uncover evidence of a crime." *United States v. Burroughs*, 882 F. Supp. 2d 113, 118 (D.D.C. 2012) (quoting *United States v. Laws*, 808 F.2d 92, 94 (D.C. Cir. 1986)). The search warrant was therefore supported by probable cause.

Even if the search warrant were invalid, the good-faith exception would apply and preclude suppression of the DNA evidence obtained in the warrant's execution. Under that exception, "evidence seized in reasonable, good-faith reliance on a search warrant" need not be excluded, even if the warrant is later found to lack probable cause. *Griffith*, 867 F.3d at 1278 (quoting *United States v. Leon*, 468 U.S. 897, 905 (1984)). As relevant here, the exception

7

applies so long as the affidavit contains sufficient indicia of probable cause to render reliance on the warrant objectively reasonable. *Id.*

That standard is satisfied here. The affidavit set forth facts linking Mr. Smith to the immediate location where the firearm was recovered, documented his suspicious movements in that location, and provided a basis to believe his DNA might be found on the firearm. *See* Def's Mot. Ex. 1. It was therefore not "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Leon*, 468 U.S. at 923 (quoting *Brown v. Illinois*, 422 U.S. 590 (1975) (Powell, J., concurring in part)); *see also United States v. Turner*, 73 F. Supp. 3d 122, 125 (D.D.C. 2014). Accordingly, suppression of the buccal swab DNA evidence is not warranted.

**B.  The Firearm Lay Abandoned and Was Not Discovered Incident to His Arrest.**

Having found that the Mr. Smith's DNA evidence from the buccal swab need not be suppressed, the next question for the Court is whether the firearm linked to Mr. Smith was unreasonably seized in violation of the Fourth Amendment. Mr. Smith contends that the police lacked probable cause to arrest him and that, as a result, any evidence obtained from a search incident to that arrest must be suppressed. Def.'s Mot. at 4–6.  He argues that officers arrested him on an "uncorroborated hunch," noting that a D.C. Superior Court magistrate judge found that his August 8 arrest was unsupported by probable cause. *Id*. Certainly, the validity of a search incident to arrest must be grounded in a lawful arrest, which, in turn, "requires probable cause to believe that a crime has been committed." *United States v. Bookhardt*, 277 F.3d 558, 564 (D.C. Cir. 2002) (citing *United States v. Christian*, 187 F.3d 663, 667 (D.C. Cir. 1999)). But the Court need not decide whether probable cause supported Mr. Smith's arrest to assess the lawfulness of the police's search and discovery of the firearm. The police did not recover the firearm pursuant

to a search incident to Mr. Smith's arrest. Rather, the firearm lay abandoned in plain view and was retrieved in a different location before Mr. Smith's arrest.

"When individuals voluntarily abandon property, they forfeit any expectation of privacy in it that they might have had." *United States v. Thomas*, 864 F.2d 843, 845 (D.C. Cir. 1989) (quoting *United States v. Jones*, 707 F.2d 1169, 1172 (10th Cir. 1983)). Consequently, "a warrantless search or seizure of property that has been abandoned does not violate the Fourth Amendment." *Id.* at 846; *see also Griffith*, 867 F.3d at 1279 ("Officers may lawfully seize property that has been voluntarily abandoned."). The test for whether evidence has been voluntarily abandoned "is an objective one," focusing on the intent of the person alleged to have abandoned the object. *Thomas*, 864 F.2d at 846. Such intent may be inferred from "words spoken, acts done, and other objective facts." *Id*. Notably, "[a]bandonment for purposes of the Fourth Amendment differs from abandonment in property law." *United States v. Lewis*, 921 F.2d 1294, 1302 (D.C. Cir. 1990) (citing *Thomas*, 864 F.2d at 845–46). Under the Fourth Amendment, the inquiry examines the individual's reasonable expectation of privacy, not his property interest in the item. *Id.* It is therefore "irrelevant" that an individual "might have repossessed the [abandoned item] if the [government] had not taken it." *Id.*

Security camera footage showed Mr. Smith walking across a parking lot to a parked vehicle at the far end, standing beside the vehicle, crouching down near the wheel well on the driver's side, then standing and walking back across the lot into a building.[2] Def.'s Mot. Ex. 2 at 7:16; Gov't's Ex. GX4 at 9:06–11:43. Viewing this behavior as suspicious, security officers

---

[2] At the suppression hearing, Mr. Smith asserted that the security camera footage was not relevant to whether probable cause existed to arrest him because officers did not have access to it at the time of the arrest. Hr'g Tr. 3:02–11; 4:07–17. But the Court need not determine its relevance in that regard, as the Court does not reach that issue.

monitoring the live footage proceeded to the location where Mr. Smith had been seen crouching moments earlier. Gov't's Ex. GX4 at 11:43– 15:08. There, in plain view, they observed a firearm resting on the rear tire within the wheel well on the driver's side. The security guards then called police and alerted them to the firearm, leading police to the location they had seen it. And police, too, observed the gun laying on the tire in the vehicle's wheel well in plain view. Def.'s Mot. Ex. 2 at 4:55–5:26.

Because the firearm had been abandoned and left in plain view—whether by Mr. Smith or not—police had authority to retrieve it. *See Minnesota v. Dickerson*, 508 U.S. 366, 374–75 (1993). Although Mr. Smith concedes that police had authority to seize the firearm because it was in plain view, Hr'g Tr. 14:12–15, 22–23 ("[W]e're not saying that it was an unlawful search. They found the firearm in plain view. . . . I think they had the authority to take the gun."), he nevertheless argues that the evidence cannot be used against him because it was recovered close in time to his subsequent arrest, *id.* at 15:23–16:06. And because the arrest was unlawful, the argument goes, the firearm must be suppressed as fruit of that unlawful arrest. *Id.* But searches incident to arrest are subject to temporal and spatial limits: "a search can be incident to an arrest only if it is substantially contemporaneous with the arrest and is confined to the immediate vicinity of the arrest." *Shipley v. California*, 395 U.S. 818, 819 (1969) (per curiam) (citation modified); *see also Chambers v. Maroney*, 399 U.S. 42, 47 (1970) ("[A] search made at another place" than the location of the arrest, without a warrant, "is simply not incident to the arrest." (quoting *Preston v. United States*, 376 U.S. 364, 367 (1964)); *In re Sealed Case 96-3167*, 153 F.3d 759, 768 (D.C. Cir. 1998) (whether a search is incident to arrest turns on "whether the arrest and search are so separated in time or by intervening events that the latter cannot fairly be said to have been incident to the former" (quoting *United States v. Abdul-Saboor*, 85 F.3d 664, 668

(D.C. Cir. 1996)). Contrary to Mr. Smith's assertion, police discovered the firearm independently of his arrest.

Upon arriving at the scene, police began investigating who might have left the firearm witnesses reported. Shortly thereafter, officers discovered and seized the firearm. Def.'s Mot. Ex. 2 at 5:02. Police continued their investigation and attempted to obtain the security footage. Def.'s Mot. Ex. 2 at 7:15–7:33, Def.'s Mot. Ex 3 at 7:51. After witnesses identified Mr. Smith, officers conferred with one another to determine whether probable cause existed to arrest him. Def.'s Mot. Ex 2 at 3:56–22:49; Def.'s Mot. Ex. 3 at 4:19–19:04. Upon believing that probable cause indeed existed, police entered the building where Mr. Smith was attending a counseling appointment and arrested him. Def.'s Mot. Ex. 2 at 25:56; Def.'s Mot. Ex. 3 at 4:25. The arrest thus occurred well after the firearm's discovery and after further investigation. Put differently, the arrest did not "follow[] quickly on the heels" of the firearm's discovery. *United States v. Lee*, No. 90-3204, 1991 WL 80656, at *2 (D.C. Cir. May 7, 1991) (per curiam) (quoting *United States v. Thornton*, 733 F.2d 121, 128 n.9 (D.C. Cir. 1984)). Moreover, Mr. Smith was arrested far from where the firearm was discovered, inside the building and through a maze of offices. *See* Def.'s Mot. Ex. 2 at 22:59–25:54; *see also Vale v. Louisiana*, 399 U.S. 30, 33–34 (1970) ("If a search of a house is to be upheld as incident to an arrest, that arrest must take place inside the house, not somewhere outside—whether two blocks away, twenty feet away, or on the sidewalk near the front steps." (citation modified)). Accordingly, the firearm was not obtained incident to Mr. Smith's arrest and is not fruit of any poisonous tree. Suppression of the firearm is thus unnecessary.

11

## IV.  CONCLUSION

For the foregoing reasons, Defendant's Motion to Suppress (ECF No. 10) is **DENIED**.

An order consistent with this Memorandum Opinion is separately and contemporaneously issued.


Dated:  May 1, 2026                                    RUDOLPH CONTRERAS
                                                        United States District Judge