**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | |
| | | **25-CR-342 (RC)** |
| **v.** | : | |
| **ERIC MALIK SMITH.** | : | |

## OPPOSITION TO GOVERNMENT'S MOTION TO ADMIT EVIDENCE PURSUANT TO FEDERAL RULES OF EVIDENCE 404(b) AND 609

Pending before the Court is the government's Motion to Admit Other Crimes Evidence Pursuant to Federal Rule of Evidence 404(b) and to Impeach Defendant with Prior Conviction Pursuant to Federal Rule of Evidence 609. *See* Gov't Mot., Dkt. No. 25. The Court should deny the government's motion and exclude the use of the proposed other crimes evidence at trial because (1) it consists only of propensity evidence and is not admissible under Rule 404(b), and (2) any probative value to this evidence is outweighed by its prejudicial effect, requiring exclusion under Federal Rule of Evidence 403. The Court should also deny the government's request to admit the prior offense under Federal Rule of Evidence 609 because the prejudice outweighs any probative value.

### FACTUAL BACKGROUND

On August 8, 2025, individuals from the D.C. Office of Neighborhood Safety and Engagement ("ONSE") building called the Metropolitan Police Department ("MPD") to report a "suspicious person" who was allegedly seen on CCTV video surveillance in the parking lot outside the building. According to MPD officers who arrived on the scene, two individuals employed in the building reported that a

1

security officer watching CCTV footage in real time saw Mr. Smith "acting suspicious" by ducking down by the wheel well of a vehicle and looking around. *See* Exhibit 1, Gerstein Affidavit. Employees then reported to MPD that they saw a firearm in the rear passenger side wheel well. *Id.* MPD arrived on the scene and recovered a firearm in that location.[1] *Id.* Based on these observations, MPD arrested Mr. Smith for Carrying a Pistol Without a License. Mr. Smith was later charged in federal court with one count of Unlawful Possession of a Firearm by a person previously convicted of a felony, in violation of 18 U.S.C. § 922(g)(1).

The government now seeks to admit evidence that Mr. Smith was enrolled in programming at ONSE called the "Pathways Program"; information about ONSE itself; evidence about an alleged altercation at ONSE that occurred prior to August 8, 2025, the date of Mr. Smith's arrest; and evidence that Mr. Smith was previously convicted of a felony and details of that felony. The government also seeks to admit Mr. Smith's prior felony conviction to impeach Mr. Smith if he were to testify.

## ARGUMENT

**I.    The government's proffered evidence fails both prongs of analysis under Rule 404(b) and should not be admitted.**

Under Rule 404, evidence of prior acts is inadmissible "to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). Instead, such evidence may only be admissible to show "motive, opportunity, intent, preparation, plan,

---

[1] The government's motion incorrectly states that the firearm recovered was a Glock 27 Gen 4 9mm handgun. According to all of the government's reports, the recovered firearm was actually a Glock 17 Gen 4 9mm firearm.

knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). As the Supreme Court has stated, "introduction of evidence of a defendant's prior crime risks significant prejudice." *Almendarez-Torres v. United States*, 523 U.S. 224, 235 (1998); *see also Michelson v. United States*, 335 U.S. 469, 476 (1948) ("[Prior acts are] said to weigh too much with the jury and to so overpersuade them as to prejudge one with a bad general record and deny him a fair opportunity to defend against a particular charge."). The rule against introducing character evidence, also known as "propensity evidence," is not based on the idea that the evidence of a defendant's character is irrelevant. It is instead based "on a fear that juries will tend to give it excessive weight, and on a fundamental sense that no one should be convicted of a crime based on his or her previous misdeeds." *United States v. Daniels*, 770 F.2d 1111, 1116 (D.C. Cir. 1985).

Due to significant prejudicial risks, the D.C. Circuit requires a two-step analysis when determining whether prior acts are admissible under Rule 404(b). *See United States v. Washington*, 969 F.2d 1073, 1080 (D.C. Cir. 1992). *First*, the court must determine whether the evidence is "probative of some material issue other than character." *United States v. Clark*, 24 F.3d 257, 264 (D.C. Cir. 1994). *Second*, if the court finds the evidence relevant to a noncharacter issue, it will still be excluded if it is inadmissible under any other "general strictures limiting admissibility." *United States v. Miller*, 895 F.2d 1431, 1435 (D.C. Cir. 1989). Most important among these strictures is Rule 403, which bars admission of relevant evidence if its probative value "is substantially outweighed by the danger of unfair prejudice, confusion of the issues,

or misleading the jury, or by . . . needless presentation of cumulative evidence."
*Washington*, 969 F.2d at 1081; Fed. R. Evid. 403. Because the proffered evidence fails both steps of the analysis, the Court should deny the government's motion to admit evidence about Mr. Smith's participation in ONSE's Pathways Program; alleged altercation at ONSE; and prior conviction.

### a. Information about ONSE and the Pathways Program.

The government hopes to introduce six paragraphs of "background" information about ONSE and the Pathways program. But this "background" information is not at all relevant to any issue before the court. Second, even if the court finds the six paragraphs marginally relevant, they contain highly prejudicial information, and improper lay opinion testimony or would require testimony by an unnoticed expert. The court should exclude the government's requested evidence and instruct the government to caution its witnesses not to testify to inadmissible material.

*The proffered information is not relevant.*

With regard to relevance, the government argues that the background information

- Is essential context for Smith's actions,

- Demonstrates Smith's knowledge of ONSE's protocols and security screenings,

- Explains why staff are familiar with Smith,

- Explains why security officials were suspicious of Smith's actions, and

- Explains why security is taken so seriously at ONSE.

However, the government did not even attempt to explain why the six paragraphs of information help to advance any of these propositions. How does any of the information contained within the identified six paragraphs demonstrate Smith's knowledge of security protocols? It does not, as security protocols are not mentioned once in the six paragraphs identified by the government. How does the proffered information explain why staff are familiar with Smith? It does not, because the purpose of ONSE and Pathways doesn't explain why the staff knew Smith. How does the proffered information explain why security officials were suspicious of Smith's actions? It does not, and in fact, evidence suggests that security were suspicious of Smith for reasons entirely independent of the missions of Pathways or ONSE. When questioned by police, the security guard who observed Smith on camera said she was suspicious of him because he was within the field of view of a camera that had been moved and because she saw him looking around when he was standing near the location where the firearm was found. None of the "background" information actually explains why security were suspicious. And how does any of the proffered information explain why security is taken seriously at ONSE? It does not; nor is the proposition "that security is taken so seriously" at all relevant. First, what does the government mean by the statement that security is taken "so seriously"? Merely that Smith was attending a program inside a building that has security guards, security cameras, and a metal detector? One wonders how these safeguards qualify as taking security "so seriously." Indeed, security guards, cameras, and metal detectors are commonplace in government buildings throughout the district. One cannot even walk

into a museum or attend a concert without encountering similar security protocols. Second, the mission and purpose of ONSE and Pathways does not explain why these security protocols are in place, as these security measures also occur in buildings that have nothing to do with gun-violence prevention. And third, even if the background information did explain the reasoning behind implementing these protocols, that reasoning is irrelevant to whether Smith possessed a firearm outside the building.

Of course, the fact that the building has security cameras is relevant: the jury will be viewing surveillance footage. The fact that the building has security guards is relevant: the jury will be hearing from those security guards. The fact that the building has a metal detector at its entrance is also relevant: that might explain why the government claims Smith would stash a firearm outside the building. But the government cannot seriously argue that it needs to introduce any of the information contained within the proffered six paragraphs to explain the fact that these security measures were in place. And Smith is not attempting to exclude the fact of these security measures from the trial.

Although Smith acknowledges that the jury ought to hear some context surrounding the charged conduct, the proffered "background" information does not contain any relevant context. The jury could be informed that Smith was attending a program sponsored by the DC Government, that the program was housed in a building that had several security measures, and that Smith had attended the program for some time before the charged conduct. But the government fails to make any argument as to why the program's focus on gun-violence prevention has any

relevant context to the charge.

The government has not advanced any argument that background information about ONSE and Pathways is at all relevant to the charge. Its arguments for relevance are nothing short of conclusory assertions devoid of reasoning, and some of its arguments are contradicted by the evidence in this case. Thus, the evidence should be excluded under Fed. R. Evid. 402.

### *The proffered information is unfairly prejudicial and inadmissible*

Beyond being irrelevant, the information contained within the identified six paragraphs is unfairly prejudicial. Does the government really intend to tell the jury that Smith was involved in a program aimed at gun-violence prevention in a case where the sole issue is whether Smith possessed a firearm? And that Smith was identified as being among "those most likely to be involved in gun violence" and was provided with, through the program, "an alternative to crime"? First, Smith disputes a number of premises necessary for the introduction of this evidence. By what mechanism does ONSE "identify" those most likely to be "involved in gun violence?" What peer-reviewed evidence supports the method of identification? How was that mechanism applied to Smith? What about Smith makes him a "high-risk individual[ ]"? This information would require expert testimony, and the government has not noticed any expert who could provide a basis for this evidence. That alone is reason to exclude it, as the defense would also likely need to consult with its own expert to challenge this evidence. It is not at all clear whether such testimony would pass the *Daubert* standard. Finally, some discovery suggests that Smith was referred to the

program by his cousin, and not that any reliable method was used to "identify" him as being someone who should be in the program. Thus, this "background" information either requires expert testimony or is simply inapplicable to Smith, who was enrolled in Pathways simply because his cousin recommended him for the program.

More importantly, the proffered "background" information is simply unfairly prejudicial propensity evidence. Generally, propensity evidence is not admissible. *See United States v. Green*, 149 F.4th 733, 751 (D.C. Cir. 2025). The government hopes to introduce this evidence because of the inference it wants the jury to draw: that Smith is more likely to have possessed this firearm because he was deemed likely to possess firearms generally. Here, the government cannot proffer any permissible purpose for introducing this evidence beyond it providing context—but even the context it provides is irrelevant and unfairly prejudicial. Again, Smith agrees that some context is necessary, and the government should be able to introduce evidence that Smith was attending a program with various security measures and that he was likely aware of them because of his prior attendance with the program. But the program's focus on gun-violence prevention is completely irrelevant and is likely to invite the jury to convict Smith based on some agency's determination that he was at risk of being involved in gun violence.

Put simply, the government cannot establish the necessary foundation to admit the proffered background information, which would require expert testimony. Even if the government could, the evidence is not relevant to any issue before the jury. Finally, the evidence is also unfairly prejudicial, and any potential probative

value is substantially outweighed by the danger of unfair prejudice.

### b.  Evidence about alleged altercation at ONSE.

The government seeks to admit some evidence that the day before the charged conduct, Smith was involved in "a verbal altercation" with an employee of the Pathways program. From this, the government hopes to establish that Smith had a motive to stash a firearm "potentially to protect himself in a further altercation." ECF No. 25 at 7. The government also claims that this information explains "why security officials were aware of the defendant and why they found his behavior in the parking lot suspicious." *Id*. Neither of these arguments provide a theory of admissibility.

First, the government has not explained how it intends to introduce this evidence. The government provided some discovery (in a May 19 production) that summarizes an incident on August 7. But that summary is just that: a compilation of hearsay that suggests that some sort of argument occurred, that no violence was observed, and that within five minutes, the incident resolved with both parties later appearing remorseful for their conduct and committed to moving forward. Although the discovery suggests that Smith admitted to using "some threatening words in the heat of the argument," none of the discovery actually contains any of the words or threats allegedly used. Nor does the discovery contain any of the words Smith used to describe the incident. Instead, it appears that whether threats were made was a conclusion drawn by staff at the Pathways program, and no admissible evidence has been proffered to support that conclusion. Additionally, other discovery characterizes the incident merely as "a verbal exchange . . . between the fitness instructor [ ] and

[Smith]." Thus, this evidence fails the 404(b) test because the government cannot even establish that anything other than a "verbal exchange" occurred. *See United States v. DeCicco*, 370 F.3d 206, 212 (1st Cir. 2004) (requiring as a threshold inquiry to 404(b) evidence that the government present enough evidence from which a jury could find that the prior bad act occurred).

Equally important, the government has not provided any evidence to suggest that Smith believed he was under any impression he was at risk of future violence from that fitness instructor, thus negating its argument that the incident provides motive. Indeed, after the incident, Smith remained at the Pathways program, spoke to staff on multiple occasions, and never expressed that he believed he needed protection from that instructor. One staff member described that Smith "understood and appreciated the de-escalation from staff" and that Smith agreed to "participate in mediation" with the fitness instructor and "apologized for his previous behavior in the class." Thus, when viewed in the context of what actually occurred, the incident appears less like a threatening event that gives rise to motive and more like a simple disagreement where both parties admitted fault and neither party appeared aggrieved.

Finally, the government offers a post-hoc rationalization for admitting the evidence without acknowledging that its theory of admissibility is fabricated. The government claims this incident helps explain why security were suspicious of Smith. However, it appears that the security guards only learned that this incident was connected to Smith after they observed the firearm and called 911. Indeed, when

10

police interviewed the security officer who first found the firearm, that person claimed that she was alerted to Smith because one of the cameras had been moved by a different (unnamed and unknown) security officer, and that Smith was in the camera's field of view. According to her, this meant that some other security officer might have been focused on Smith, but she did not provide any reason as to why that occurred, much less that it was because Smith was involved in a verbal disagreement the day prior. And the security guard specifically stated that she was suspicious of Smith because she saw him looking around—not that she knew he was involved in a verbal dispute the day before. Finally, she told police that she couldn't say who that person was (and she never identified Smith by name or gave a description), but that the person appeared to be one of the Pathways students because of the backpack that he was wearing. Thus, the incident the day prior does not explain security's suspicions while investigating Smith's behavior near where the firearm was found. The government's arguments for the introduction of this evidence fail for multiple reasons, and no logical nexus connects what actually occurred the day prior to any motivation for Smith to commit the charged crime.

This evidence is also highly prejudicial. For the jury to hear allegations that Mr. Smith allegedly made threats to another person would create irreversible damage. If permitted, the defense would be forced to conduct a mini-trial within a trial to disprove the government's theory. *See Eghnayem v. Bos. Sci. Corp.*, 873 F.3d 1304, 1318 (11th Cir. 2017) (district court did not abuse discretion by excluding evidence that "might have provoked the parties to engage in a time-consuming mini-

trial" where "concerns of prejudice and confusion substantially outweighed the probative value of the evidence"); *Moe v. Avions Marcel Dassault-Breg Aviation*, 727 F.2d 917, 935 (10th Cir. 1984) (district court "correctly observed that certain tenders of evidence..would constitute a mini-trial within a trial, resulting in undue delay, waste of time, and needless presentation of cumulative evidence).

### c.  Evidence about Mr. Smith's prior conviction.

Admitting Mr. Smith's prior conviction serves no other purpose than to show he has a propensity to own firearms—an intolerable proposition that would cause severe prejudice. "T]he threshold inquiry a court must make before admitting similar acts evidence under Rule 404(b) is whether that evidence is probative of a material issue other than character." *Huddleston v. United States*, 485 U.S. 681, 686 (1988). This rule is based on the presumption of innocence and the recognition that "[i]t is fundamental to American jurisprudence that 'a defendant must be tried for what he did, not for who he is.'" *United States v. Foskey*, 636 F.2d 517, 523 (D.C. Cir. 1980) (internal citation omitted). The D.C. Circuit has "repeatedly emphasized the narrow scope of the 'bad acts' evidence exceptions under Rule 404(b) . . . and the continuing applicability of the Rule 403 limitation on unduly prejudicial evidence even if an exception is satisfied." *United States v. Nicely*, 922 F.2d 850, 856 (D.C. Cir. 1991).

To satisfy Rule 404(b), the evidence of other crimes or acts must be (a) relevant under Federal Rule of Evidence 401, (b) related to "a matter in issue other than the defendant's character or propensity to commit crime," and (c) "sufficient to support a jury finding that the defendant committed the other crime or act." *United States v.*

*Bowie*, 232 F.3d 923, 930 (D.C. Cir. 2000). "[S]uch evidence is never admissible unless it is 'necessary' to establish a material fact such as 'motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.'" *United States v. Shelton*, 628 F.2d 54, 56 (D.C. Cir. 1980) (emphasis added) (footnote omitted).

The government bears the burden of demonstrating the relevance and necessity of the "prior bad acts" it seeks to have admitted. *See United States v. Hudson*, 843 F.2d 1062, 1066 (7th Cir. 1988); *United States v. Hogue*, 827 F.2d 660, 662 (10th Cir. 1987). The government cannot meet its burden because the proffered evidence is irrelevant to any material issue other than propensity and it is not necessary to establish a material fact, as required under Rule 404(b).

The government claims that evidence of Mr. Smith's 2024 conviction for aiding and abetting the straw purchase of a firearm is probative as to constructive possession of the firearm in this case.[2]  Gov't Mot. at 7–11.  Under a theory of constructive possession, the government must prove that a defendant "knew of, and was in a position to exercise dominion and control over" the firearm in question. *United States v. Cassell*, 292 F.3d 788, 792 (D.C. Cir. 2002) (quoting *United States v.*

---

[2] Mr. Smith's conviction for aiding and abetting the straw purchase, moreover, is factually distinct from the alleged events underlying the § 922(g)(1) charge in the instant case. It is completely dissimilar to the conduct allegedly involved here: the firearm is different being a Glock 27 pistol, the charge did not relate to possession as the crime was submitting an ATF form to purchase a firearm for another individual, and the evidence in the prior conviction that while Mr. Smith took possession of the firearm, that it was for the purpose of giving it to another individual. Other than involving a gun, any evidence related to the prior conviction is irrelevant to the instant charge and risks unfair prejudice.

*Clark*, 184 F.3d 858, 863 (D.C. Cir. 1999)). The D.C. Circuit has held in the constructive-possession context that "where a defendant is charged with unlawful possession of something, evidence that he possessed the same or similar things at other times is often quite relevant to his knowledge and intent with regard to the crime charged." *United States v. Garner*, 396 F.3d 438, 443 (D.C. Cir. 2004) (quoting *Cassell*, 292 F.3d at 793; *United States v. King*, 254 F.3d 1098, 1100 (D.C. Cir. 2001)).

But as pertains to actual possession, "[t]he D.C. Circuit has never held . . . that evidence of prior possession of a gun is probative of knowledge, absence of mistake, or any other non-propensity purpose to support an actual-possession theory in a gun case." *United States v. Burns*, No. 24-CR-151 (JMC), 2025 WL 1078781, at *4 (D.D.C. Apr. 10, 2025). The D.C. Circuit explained in *United States v. Linares*, 367 F.3d 941 (D.C. Cir. 2004), that it was "hard to see how [a defendant] could possibly have possessed [a] gun unknowingly, i.e., without being aware that he possessed it or without realizing that the object in his hand was a gun," or by mistake, in light of evidence showing that the defendant physically possessed and handled the gun. *Id.* at 946– 47. The Court explained that a defendant who physically handles a gun "could not have possessed the gun without recognizing the nature of the object in his hand." *Id.* at 951. Therefore, "no reasonable jury could . . . acquit[ ] [the defendant] based on the belief that the government proved [actual] possession but failed to prove knowledge." *Id.* at 946–47. Because prior crimes evidence purports to prove "intent, . . . knowledge, . . . absence of mistake, or lack of accident," Fed. R. Evid. 404(b), and because in an actual possession case, the government's evidence would "completely

14

preclud[e] an acquittal" based on the failure to prove the mens rea, *Linares*, 367 F.3d at 947, the prior crimes evidence is irrelevant and therefore inadmissible in an actual possession case.

Despite the government's focus on the theory of constructive possession in its motion, this is not a constructive possession case. *See* Gov't Mot. at 7 (emphasis added) ("The defendant in this case *could argue* that he was not in actual possession of the firearm that he is charged with possessing."); *id.* at 8 (emphasis added) (arguing that prior crimes evidence will be probative as to whether Mr. Smith "*knowingly* possessed the firearm sitting on the wheel well of the car"). The defendant was not charged with constructively possessing the firearm. He is charged under 18 U.S.C. § 922(g)(1), meaning the government must prove that the defendant "knowingly" possessed the gun, *either* through "actual" or "constructive" possession. *See Henderson v. United States*, 575 U.S. 622, 626 (2015). And the government's version of the facts in this case indicates that the evidence it will introduce is about actual possession.[3] The government will likely argue that Mr. Smith possessed the gun on his person when he was observed on CCTV footage; that he actually possessed the gun when was acting "in a suspicious manner in the rear parking lot of the office"; that he actually possessed the gun when he bent down near the wheel of the vehicle; and that DNA evidence supports this version of events. *See* Gov't Mem. in Opp'n to Def.'s Mot. to Suppress Physical Evidence, Dkt. No. 11, at 2–3. By the government's

---

[3] In fact, during the suppression litigation, both the government and the court agreed that the firearm was not being constructively possessed by Mr. Smith and that the firearm was rather abandoned thereby forfeiting any Fourth Amendment rights to it.

15

own admissions, this is not a case where there is "no evidence that [the defendant] actually possessed the firearm[]." *Cassell*, 292 F.3d at 792.

As in *Linares*, evidence of Mr. Smith's prior conviction for aiding and abetting the straw purchase of a firearm is irrelevant as to any non-propensity issue under an actual-possession theory. If the jury credits the evidence that Mr. Smith possessed the gun on his person before allegedly placing it in the wheel well of the car, it will also reasonably find that he *knew* he had a gun. But if the jury does not credit the evidence, the jury will acquit based on the lack of physical possession—separate proof of knowledge is irrelevant. And under a constructive-possession theory of the case, the evidence of knowledge is also irrelevant because the government is using the same evidence to support its constructive-possession theory that supports its actual-possession theory. *See Linares*, 367 F.3d at 947 ("The jury would have needed to consider constructive possession only if it entertained a reasonable doubt as to actual possession[.]"). If the evidence is rejected, then there would not be "any basis to conclude beyond a reasonable doubt that [the defendant] even possessed the gun, either actually or constructively." *Id.* at 948.

Simply put, this is not the typical case where courts have allowed admission of a prior conviction to prove construction possession because the prior conviction here (1) was a straw purchase case and not a classic constructive possession case, and (2) and the instant matter is not a constructive possession case at all. The evidence of Mr. Smith's prior conviction will not be probative as to whether he "knowingly" possessed the gun on this occasion, and as such, may not be admitted pursuant to

16

Rule 404(b).

## II.    The prejudicial effect from admitting Mr. Smith's prior conviction would outweigh the probative value in violation of Rule 609.

If Mr. Smith testifies at trial, the government seeks to impeach his credibility under Federal Rule of Evidence 609 using evidence of his prior conviction for aiding and abetting false statements related to purchase of a firearm. *See* Gov't Mot. at 12–14.

Impeaching a witness with a prior felony conviction is not a given. Rule 609(a)(1)(B) limits the use of prior convictions to impeachment of "a witness's character for truthfulness." Fed. R. Evid. 609(a). For regular witnesses (cases in which the witness is not a defendant), Rule 609 requires the district court to consider whether a prior felony's probative value is substantially outweighed by unfair prejudice, confusing the issues, and the like. *See* Fed. R. Evid. 609(a)(1)(A) (requiring Rule 403 analysis).

For criminal defendants, however, the standard is more stringent, forbidding admission if prejudicial effect of the conviction "merely outweighs" its probative value. 4-609 Weinstein's Fed. Evid. § 609.05[3][a] (2019); *see also* Fed. R. Evid. 609(a)(1)(B) (omitting the word "substantial"). This more stringent standard exists because "a jury is more likely to use a prior conviction against the defendant as propensity than it would when faced with a government witness's prior conviction." 4-609 Weinstein's Fed. Evid. § 609.05[3][a] (2019); *see also United States v. Tse*, 375 F.3d 148, 163 (1st Cir. 2004) ("These distinctions—'substantially outweighs' versus 'outweighs,' and 'unfair prejudice' versus 'prejudicial effect'—support the assertion of

17

the Weinstein treaties . . . [and recognize] there is a heightened risk that a jury will use evidence of a prior conviction of the accused to draw an impermissible propensity inference[.]").

To guard against this impermissible inference, the government is compelled to show that a prior conviction's probative value outweighs its prejudice to the defendant. *See United States v. Smith*, 551 F.2d 348, 361 (D.C. Cir. 1976) (Rule 609 "shift[s] to the prosecution the burden of demonstrating that the probative value on the issue of credibility outweighs prejudicial effect to the defendant."). This Circuit has emphasized that "evidence of prior criminal activity would impermissibly lead juries to discredit witnesses because they are 'bad men,' rather than because they are biased or not credible." *United States v. Tucker*, 12 F.4th 804, 823 (D.C. Cir. 2021) (quoting *United States v. Fox*, 473 F.2d 131, 135 (D.C. Cir. 1972)). In determining whether the probative value outweighs any prejudice, "a district court should consider the following relevant factors: (1) the kind of crime involved; (2) when the conviction occurred; (3) the importance of the witness's testimony to the case; (4) the importance of the credibility of the defendant; and (5) generally, the impeachment value of the prior crime." *United States v. Anderson*, 174 F. Supp. 3d 104, 105 (D.D.C. 2016) (internal citation and quotation marks omitted).

The government has the burden of convincing this Court that the probative value of Mr. Smith's prior conviction outweighs any prejudice to him, *United States v. Lipscomb*, 702 F.2d 1049, 1051 (D.C. Cir. 1983) (en banc), and it has failed to do so. The government sets forth no reasons to believe that Mr. Smith's prior conviction is

probative other than to say that *all* felonies have probative value on the issue of credibility. *See* Gov't Mot. at 13–14 (quoting *United States v. Lipscomb*, 702 F.2d 1049, 1062 (D.C. Cir. 1983)).

But this is not legally sufficient. Mr. Smith's prior conviction would do little to shed light on his character for truthfulness, which is the purpose of impeachment by prior conviction. *See United States v. Holland*, 41 F. Supp. 3d 82, 93 (D.D.C. 2014) (recognizing that "certain types of felonies are not particularly probative of a witness's credibility under 609(a)(1), especially when they do not require plaintiffs to make a false statement); *see also United States v. Rosales,* 680 F.2d 1304, 1306–07 (10th Cir. 1981) (excluding conviction for illegal possession of a firearm as "not normally suggest[ive of] the special probative value on the issue of credibility contemplated by Fed. R. Evid. 609(a)(1)"). By eliciting his prior conviction, the government would invite the jury to speculate that Mr. Smith is guilty of the instant offense because he committed a serious crime in the past. Additionally, the fact that the prior conviction involves a firearm, the same as in the instant case, increases the likelihood a jury would misuse the evidence. Thus, there is a great risk that in allowing the admission of his prior conviction, the jury could convict Mr. Smith based on his prior misdeeds, and not on what the government can prove he did in this case.

Finally, even if the Court attempts to abate the prejudice with an appropriate cautionary instruction to the jury, that instruction would not be enough. The D.C. Circuit has recognized that a limiting instruction fails to cure the problem: "When 'the jury is told to consider the defendant's prior conviction only on the issue of

credibility and not on the overall issue of guilt the jury is required to perform a mental gymnastic which is beyond, not only their powers but anybody else's.'" *Holland*, 41 F. Supp. 3d at 94–95 (cleaned up) (quoting *Lipscomb*, 702 F.2d at 1062). Therefore, the surest means of safeguarding Mr. Smith's right to a fair trial is to exclude this prejudicial evidence altogether, dispensing with the need to provide a limiting instruction.

## Conclusion

For the foregoing reasons, and any such other reasons as may be presented at a motions hearing, Mr. Smith respectfully requests that this Court deny the government's motion to admit prior acts under both Rules 404(b) and 609.

Respectfully submitted,

A. J. KRAMER
FEDERAL PUBLIC DEFENDER

/s/
Maria N. Jacob
Benjamin Schiffelbein
Assistant Federal Public Defenders
625 Indiana Ave., N.W., Suite 550
Washington, D.C.  20004
(202) 208-7500

20